# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| FIRMA HEGLET, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 13-2228-KHV/KGG |
| CITY OF HAYS, KANSAS, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER ON PLAINTIFF'S MOTION TO COMPEL

Before the Court is Plaintiff's Motion to Compel (Doc. 21). The dispute centers on a series of interrogatories and requests for production which seek information regarding communications Defendants had with counsel prior to the termination of Plaintiff's employment. Plaintiff claims the attorney-client privilege and work product doctrine were waived by production of documents in her personnel file as well as Defendants' use of the qualified immunity defense. Plaintiff also seeks certain information regarding computer equipment owned by Defendant City of Hays. Plaintiff's motion is **GRANTED in part** and **DENIED in part** for the reasons set forth below.

## BACKGROUND

Plaintiff brings this lawsuit against her former employer, Defendant City of Hays, Kansas (Defendant City), as well as individual Defendants Toby Dougherty,

the City Manager for Defendant City, and Donald Scheibler, Chief of Police for Defendant City. (*See generally* Doc. 1.) Plaintiff brings various claims against Defendants for the allegedly wrongful termination of her employment. Specifically, she contends that she was improperly fired after submitting an affidavit in a lawsuit (hereinafter "Dryden lawsuit") brought by former Hays, Kansas Police Department Officer Blaine Dryden against Defendant City, Defendant Dougherty, and the former Chief of Police "alleging interference with his constitutional rights . . . ." (*Id.*, at 3-4.) Plaintiff contends, in part, that her termination constituted an unlawful interference with her right to testify at trial in violation of the First Amendment, an unlawful interference with her right to speak on a matter of public concern, and a violation of public policy. Defendants deny Plaintiff's claims and contend that her employment was terminated "because she could not maintain confidentiality . . . misused city computers . . . and could not effectively work with her superiors." (Doc. 42, at 1.)

At issue are discovery requests regarding communications described by Plaintiff as "between the City and its attorneys asking if they would be legally justified in firing her, which the City has since used as the basis for several affirmative defenses and has voluntarily disclosed" to Plaintiff. (Doc. 21-1, at 2.) Plaintiff continues that because Defendants "placed advice they received from their attorneys into [Plaintiff's] personnel file, produced it to her in discovery, and relied

on such advice to claim their actions were 'lawful' and in 'good faith,' [Plaintiff] believes they have waived attorney-client privilege and work product protection as to this advice." (*Id*.) Plaintiff also seeks certain information regarding Defendant City's computers "[b]ecause of the City's shifting explanations for why [Plaintiff] was fired . . . ." (*Id*.)

The referenced document that had been placed in Plaintiff's personnel file and voluntarily produced in discovery was titled "Time Line With Firma" and included an entry for May 10, 2012, written by Defendant Scheibler, which stated in part: "I was contacted . . . by Peter Maharry and was questioned about an affidavit that Firma had signed in the Dryden lawsuit. . . . I spoke with [attorney] John Bird and he agreed with concerns about confidentiality. John Bird spoke with Peter and then called me back and he stated that the City would be justified in moving forward." (Doc. 21-6, at 1.) The time line also indicates that Scheibler met with John Bird the next day and confirmed that Bird was "ok" with Defendant City terminating Plaintiff's employment. Id., at 2. Plaintiff has propounded an Interrogatory and five Requests for Production seeking information, documents, and/or ESI relating to conversations between Defendant City's employees and attorneys Mr. Bird and/or Mr. Maharry relating to Plaintiff's employment or the termination thereof. (Doc. 21-1, at 5-6.)

Defendant objects to producing this information on the basis of the attorney-

client privilege and work product doctrine. Plaintiff contends that the information disclosed in the time line constitutes a waiver of the attorney-client privilege.

## ANALYSIS

A.  **Attorney-Client Privilege**.

Federal court jurisdiction in this case is based on Plaintiff's claims arising under the United States Constitution as well as a federal statutory scheme, 42 U.S.C. § 1983.[1] (Doc. 1, at 2.) As such, federal law provides the rules of decisions as to the application of the attorney-client privilege. Fed.R.Evid. 501. Under federal common law, the essential elements of the attorney-client privilege are: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived. *Marten v. Yellow Freight Sys., Inc.*, No. 96-2013-GTV, 1998 WL 13244, *5 (D. Kan. Jan. 6, 1998) (citation omitted).

> The privilege 'protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor.' The privilege also protects advice given by the

---

[1] Plaintiff's claims also arise, in part, under the laws of the State of Kansas. The Court notes, however, that the analysis of the privilege does not differ substantively whether addressed under federal or state law.

> lawyer in the course of representing the client. The
> privilege protects communications with in-house counsel
> as well as outside attorneys. The privilege, however, 'is
> to be extended no more broadly than necessary to
> effectuate its purpose.'

*New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009) (citations omitted).

The importance of the attorney-client privilege in American jurisprudence is well-established. *See* **Cincinnati Ins. Co. v. M.S. ex rel. Serrano**, No. 11-2075-JAR/KGG, 2011 WL 6304086 (D. Kan. Dec. 16, 2011) (citing **Milavetz, Gallop &Milavetz, P.A. v. U.S.**, 130 S.Ct. 1324, at n.5 (2010) (holding that the attorney-client privilege is an important "means of protecting that relationship and fostering robust discussion" between a party and its counsel)). As such, waivers of the privilege are to be narrowly construed. *Id.*

Plaintiff claims that Defendants waived the attorney-client and work product doctrine "by voluntarily disclosing the advice they received, and by placing it into [Plaintiff's] personnel file as the justification [Defendant City] used to fire" Plaintiff. (Doc. 21-1, at 7.) Defendant City responds that the entries

> simply note conversations with counsel. They do not
> spell out the advice given or all the issues discussed. At
> best, they establish that legal advice was sought, but they
> do not state the substance of the conversations. There
> simply is no waiver.

(Doc. 42, at 4.) In other words, Defendant City argues that it merely disclosed the

fact that the conversations with counsel occurred regarding the general topic of Plaintiff's involvement in the Dryden lawsuit. Thus, the parties agree, and the Court finds, that the pivotal issue is whether the voluntary disclosures were substantive, or merely disclosures of the fact that advice was obtained. *See* ***United States v. Ryans***, 903 F.2d 731, n.13 (10th Cir. 1990) (holding that the privilege is lost if the client discloses the substance of the privileged communication).

The Court finds that the disclosure in this case included the substance of the attorney's conclusions. Although the time line entry is brief, there is a substantive recitation of the legal advice given to Defendants. (Doc. 42, at 6.) The entry indicates that Scheibler spoke with counsel regarding "concerns about confidentiality," and counsel agreed. (Doc. 21-6, at 1.) Counsel also told Scheibler that "the City would be justified in moving forward." *Id*. This is not a simple disclosure that a consultation was obtained, but reveals the legal advice rendered. Thus, Defendants voluntary waived the privilege as a result of producing this document in this case, and the Plaintiff's motion is **GRANTED** on that basis.

In the alternative, Plaintiff contends that Defendants "waived the attorney-client privilege and work product protection by relying on their attorneys' advice to justify their actions, thus putting the advice they sought and the advice they received at issue in this case." (Doc. 21-1, at 9.) *See* ***State ex rel Stovall v. Meneley***, 271 Kan. 355, 22 P.3d 124 (2001) (citing ***Hearn v. Rhay***, 68 F.R.D. 574,

579-81 (E.D. Wash. 1975)).

The test set out in *Hearn* has also been applied to federal actions brought in Kansas federal courts. ***Williams v. Spirit/United Management Company***, 464 F.Supp.2d 1100 (D. Kan. 2006); ***State of New Jersey v. Sprint Corporation***, 258 F.R.D. 421 (D. Kan. 2009). The Court agrees that this standard is applicable to the present issue.

Under the *Hearn* test, the Court must find each of three conditions present to evoke a waiver. First, the assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; second, through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case, and third, application of the privilege would deny the opposing party access to information vital to its defense. ***Williams***, 464 F.Supp.2d at 1104; *see also* ***Serrano***, 2011 WL 6304086, at *6. The privilege is then found impliedly waived through the party's own actions when the party "places information protected by it at issue through some affirmative act for his own benefit, and to allow the privilege to protect against such disclosure of such information would [be] manifestly unfair to the opposing party." ***Hearn***, 68 F.R.D., at 581 (cited with approval in ***Williams***, 464 F.Supp.2d at 1105).

The ***Hearn*** court reviewed an assertion of privilege by state officials who had interposed a immunity defense to a claim under the Civil Rights Act. That

court ruled that because consultation with counsel was essential to the good faith defense, if the plaintiff could first show substantial merit to his claim, the attorney client privilege was waived by the assertion of the immunity claim. 68 F.R.D. 574.

In *Williams* the Kansas District Court, applying *Hearn*, rejected an argument that reliance on good faith compliance with internal policies in an Age Discrimination in Employment Act case waived the privilege, even when those policies includes a required legal review. *Williams*, 464 F.Supp.2d at 1105. The Court observed that "the mere fact that privileged material is relevant to a matter that is raised as an issue in connection with the assertion of an affirmative defense is insufficient to trigger a waiver." *Id*.

Similarly, in *State of New Jersey v. Sprint*, the court rejected an argument that corporate directors had waived the attorney client privilege by testifying generally about receiving legal advice, when none of the defendants had raised advice of counsel as a legal defense. 258 F.R.D. at 432-433. The difference between *Williams* and *Sprint* on one hand versus *Hearn* on the other is that in the former cases the attorney-client communications are merely relevant to the claims, while in the latter they were integral to the claim itself.

The qualified immunity defense protects government officials performing discretionary government functions from civil damages and the obligation to

defend the action.  *See* **Johnson v. Fankell**, 520 U.S. 911, 914, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997); **Harlow v. Fitzgerald**, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  The doctrine "is designed to protect public officials who act in good faith, on the basis of objectively reasonable understandings of the law at the time of their actions, from personal liability on account of later-announced, evolving constitutional norms." **Pierce v. Gilchrist**, 359 F.3d 1279, 1299 (10th Cir.2004); **Marcus v. McCollum**, 394 F.3d 813, 823 (10th Cir. 2004).

Good faith, as is relates to the qualified immunity defense, has objective and subjective elements.  **Hearn v. Ray**, *supra*.  What legal advice was received by counsel, how the official responded to that advice and, for that matter, what the official told the attorney, may be relevant to whether the defendants subjectively acted in good faith.  But the issue here is not relevance, it is waiver.  Merely asserting good faith does not waive the defense.  **Williams**, 464 F.Supp.2d at 1105.  The record in this case is unclear as to whether Defendants have gone further than a mere waiver.  Defendants have produced in discovery facts showing that they consulted with counsel prior to making the decision at issue.  If Defendants assert that consultation as part of their good faith claim (and they have not indicated in their briefing whether they will do so), that affirmative act would waive the privilege.

Regardless of the qualified immunity analysis, the Court finds that

Defendants voluntarily waived the attorney-client privilege regarding these conversations by producing the substantive entry in the time line that was included in Plaintiff's personnel file in discovery. The portion of Plaintiff's Motion to Compel relating to this information is **GRANTED**.

**B.     Discovery Regarding Defendant City's Computer Equipment**.

Also at issue is Defendant's response to Plaintiff's Interrogatory No. 9. The interrogatory which reads:

> List all computer equipment provided by the City or used by employees of the City to perform work for the City, including but not limited to hardware and/or peripherals attached to a computer such as computer cases, monitors, modems, printers, keyboards, printers, scanners, cellular phones, smart phones, Blackberry™ phones or devices, tablet computers, Portable Digital Assistants ("PDAs"), or any other electronic device provided by the City to its employees for use in performing work for the city. Include a description of equipment, serial number, all users for the period January 1, 2012 to present, and dates used, and all locations where the equipment was located for the period January 1, 2012 to present.

(Doc. 21-1, at 13.)  Defendants objects that

> the request is over broad and unduly burdensome in seeking a list of every piece of equipment provided to any employee with the City. The City has hundreds of pieces of computer equipment and over a hundred employees. To require a list that includes the description of equipment, serial number, and all users would require considerable time and effort. Further objecting, the request seeks information that is irrelevant and not likely to lead to the discovery of admissible evidence. The

> equipment used by the Parks Department, for example, does not bear on any claim being raised by Plaintiff. Further objecting, the request seeks information that is not available as the City does not have an inventory of equipment from 2012 to present. The City maintains a current inventory of equipment, but does not maintain a list of all prior equipment used by the City.
>
> Without waiving the objection, Plaintiff was provided a PC (serial number: SN - 35S8YF1), a monitor, a keyboard and a mouse. Her PC is being maintained by the City as noted in request #8 and will be made available for inspection at a mutually agreeable time and location. Plaintiff's other equipment has been transferred to other individuals within the City and the City cannot state which items were the ones used by Plaintiff. In addition, Plaintiff had access to use of three shared printers that were used by the department which includes roughly 54 employees.

(Doc. 42, at 9.)

The Court agrees that the interrogatory is, as written, overly broad, unduly burdensome, and seeks irrelevant information. Defendant contends that Plaintiff was fired, in part, for the misuse of city computers. The Court surmises that Defendants' contention is centered on the computer assigned to Plaintiff during her employment, not her potential use of the computers of more than a hundred other city employees. Plaintiff has failed to establish how information beyond Plaintiff's specifically assigned computer would be relevant and, even assuming it would be relevant, how such relevance would outweigh the potential burden on Defendant to compile and provide such information.

Although Defendant subsequently provided Plaintiff an inventory of all City computers (Doc. 21-9), Plaintiff complains that the list "does not say to whom each piece of equipment is assigned or where each item is located." (Doc. 21-1, at 13.) Thereafter, Defendants identified which City employee is or was assigned to each computer. (Doc. 46, at 12; Doc. 42-4.) Plaintiff not complains that the document does not provide information about the City's smart phones and only reflects computers currently in use without providing historical information back to January 1, 2012. Defendant contends that it does not have this information, an argument which Plaintiff contends is meritless.

The Court sees no value in requiring Defendant to engage in the labor and time intensive effort to provide this smart phone and historical computer information, even assuming it is able to do so, absent some evidence that Plaintiff spent a significant amount of time using computers or smart phones other than her own during her employment with the City. The Court will, however, order Defendant to provide the requested information for the computer equipment and smart phones of "key players" identified by Plaintiff: Scheibler, Dougherty, Brian Dawson, Patty Wolf, Erin Niehaus, and Paul Briseno. (Doc. 21-1, at 13.) In reaching this conclusion, the Court is not, however, opining as to the propriety of further discovery regarding these individuals' computers (such as whether Plaintiff will be allowed to obtain forensic imaging of a specific hard drive).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Discovery Responses (Doc. 21) is **GRANTED in part** and **DENIED in part** as more fully set forth above.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas, on this 19th day of March, 2014.

                                       S/ KENNETH G. GALE
                                       KENNETH G. GALE
                                       United States Magistrate Judge