## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| FIRMA HELGET, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-2228-KHV/KGG |
| | ) | |
| CITY OF HAYS, KANSAS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM & ORDER ON PLAINTIFF'S MOTION TO COMPEL

Before the Court is Plaintiff's "Motion to Compel Responses to Plaintiff's 5th and 6th Discovery Requests, to Deem Requests for Admission Admitted, and for Sanctions."  (Doc. 89.)  Plaintiff's document requests focus on telecommunications data (TD) and electronically stored information (ESI).  Plaintiff's request for admission pertains to an individual Defendant's conversations.  Plaintiff contends Defendants' responses are incomplete or improper and asks the Court to sanction Defendants.  (*Id.*, at 15.)  Plaintiff's motion is **GRANTED in part** and **DENIED in part**.

## I.      BACKGROUND

Plaintiff brings this lawsuit against her former employer, Defendant City of Hays, Kansas (Defendant City), as well as individual Defendants Toby Dougherty,

the City Manager for Defendant City, and Donald Scheibler, Chief of Police for Defendant City, for allegedly wrongfully terminating her employment.  (*See generally* Doc. 1.)

Plaintiff contends she was improperly fired after submitting an affidavit in a lawsuit (hereinafter "Dryden lawsuit") brought by a former Defendant City Police Department Officer against Defendant City and Defendants Dougherty and Scheibler "alleging interference with his constitutional rights . . . ."  (*Id*., at 3-4.) Plaintiff contends, in part, that her termination constituted an unlawful interference with her right to testify at trial in violation of the First Amendment, an unlawful interference with her right to speak on a matter of public concern and a violation of public policy.  Defendants deny Plaintiff's claims and contend that her employment was terminated "because she could not maintain confidentiality . . . misused city computers . . . and could not effectively work with her superiors." (Doc. 42, at 1.)

Plaintiff claims Defendant City incompletely responded to Plaintiff's Production Requests 83 and 84 and Request for Admission 41 (each from Plaintiff's fifth set of discovery requests).  (Doc. 89-1, at 4-10.)  Plaintiff also claims "[d]isputes remain regarding" Defendant City's responses to Plaintiff's Production Requests 92, 101, 102 and 103 (each from Plaintiff's sixth set of

discovery requests).  (*Id.*, at 5, 10-14.)  Plaintiff claims Defendant City refuses "to meaningfully participate in responding to [Plaintiff's] requests" and asks the Court to sanction Defendant City therefor.  (*Id.*, at 15.)

## II.   ANALYSIS

**A.   Standards on Motions to Compel.**

**1.   Discovery Requests.**

Fed.R.Civ.P. 26(b)(1) states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  As such, the requested information must be both nonprivileged and relevant to be discoverable.

"'Discovery relevance is minimal relevance,' which means it is possible and reasonably calculated that the request will lead to the discovery of admissible evidence."  ***Teichgraeber v. Memorial Union Corp. of Emporia State University***, 932 F.Supp. 1263, 1265 (D. Kan. 1996) (internal citation omitted).  "Relevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action.**"  *Smith v. MCI***

*Telecommunications Corp.*, 137 F.R.D. 25, 27 (D.Kan.1991).  Stated another way, "discovery should ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action." *Snowden By and Through Victor v. Connaught Lab.*, 137 F.R.D. 325, 341 (D.Kan.1991), appeal denied, 1991 WL 60514 (D.Kan. Mar. 29, 1991).

Thus, discovery requests must be relevant on their face.  *Williams v. Bd. of County Comm'rs*, 192 F.R.D. 698, 705 (D. Kan. 2000).  Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request.  *See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request based on overbreadth, vagueness, ambiguity or undue burden/expense objections bears the burden to support the objections).

Although the scope of discovery is broad, it is not unlimited. If the proponent fails to specify how the information is relevant the Court will not require the respondent to produce the evidence.  *Gheesling v. Chater*, 162 F.R.D. 649 (D. Kan.1995). *See also* Fed.R.Civ.P. 26(b)(2)(C)(i)-(iii) (stating that "the court must limit the frequency or extent of discovery" if, for instance, it is "unreasonably cumulative or duplicative," "the party seeking discovery has had ample

opportunity to obtain the information" or "the burden or expense of the proposed discovery outweighs its likely benefit.").

"[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed.R.Civ.P. 37(a)(4).  However, "[t]he party moving to compel discovery must prove that the opposing party's answers are incomplete."  ***Bayview Loan Servicing, LLC v. Boland***, 259 F.R.D. 516, 518 (D. Colo. 2009) (internal citations omitted).

### 2.    Requests for Admission.

"Rule 36 imposes a duty on the [party responding to a request for admission] to make a reasonable inquiry to determine his ability to admit or deny."  ***Harris v. Oil Reclaiming Co., Ltd.***, 190 F.R.D. 674, 679 (D. Kan. 1999).  An answer's sufficiency under Rule 36 may be challenged.  Fed.R.Civ.P. 36(a)(6).  "On finding that an answer does not comply with this rule, the [C]ourt may order either that the matter is admitted or that an amended answer be served."  *Id.*

However, "a denial is a sufficient answer," ***Harris***, 190 F.R.D. at 678, and "where a request contains interdependent, compound issues, a party may deny the entire statement if it is premised upon a fact which is denied."  *Id.* (internal citations omitted).  Moreover, "the Court will not require the answering party to determine all of the possible interpretations of an ambiguous request and respond

to each of them." *Id*.; *see also **Ash Grove Cement v. Employers Ins. of Wausau***,
05-2339-JWL, 2007 WL 2333350 at 3 (D. Kan. Aug. 16, 2007) (stating that
"[w]hen ruling on a motion to determine the sufficiency of answers or objections to
requests for admission, the court must consider the phraseology of the requests as
carefully as that of the answers or objections.").

### 3. Electronically Stored Information (ESI), Data and Metadata

ESI includes "data or data compilations . . . stored in any medium from
which information can be obtained either directly or . . . after translation by the
responding party." Fed.R.Civ.P. 34(a)(1)(A). *See* Advisory Committee Notes on
the 2006 Amendment to Rule 34(a) (stating that ESI "may exist in dynamic
databases and other forms far different from fixed expression on paper." Rule
34(a)'s amendment confirms "that discovery of [ESI] stands on equal footing with
discovery of paper documents."). Metadata can be extracted from data. Metadata,
or "'data about data,'" can be defined as either "'information describing the
history, tracking, or management of an electronic document' or 'information about
a particular data set which describes how, when and by whom it was collected,
created, accessed, or modified and how it is formatted.'" ***Williams v.
Sprint/United Mgmt. Co.***, 230 F.R.D. 640, 646 (D. Kan. 2005) (internal citations
omitted). "[M]etadata can come from a variety of sources; it can be created

automatically by a computer, supplied by a user, or inferred through a relationship to another document." *Id*. at 646-647.  Data or database metadata could be "the key to showing the relationships between data." *Id*. at 647.

**B.      The Disputed Discovery Requests**.

      **1.      Request 83.**

In Request for Production No. 83, Plaintiff sought "[t]he billing statements from Nex-Tech Wireless LLC for text messaging services for the City of Hays, Kansas from May 1, 2012 to present." (Doc. 89-1, at 4.)  Plaintiff contends Defendant City failed to preserve both text and instant messages and actively removed both text and instant messages from Defendant City's phones. (*Id*. at 5-6.)  Plaintiff thus seeks all billing statements for Defendant City's cellular phone text and instant messages and claims that the billing statements will demonstrate that the relevant text or instant messages exist.  (*Id*. at 6.)  Defendant City objects to Plaintiff's request and contends that (1) the billing statements cannot show the actual messages, (2) the billing statements will not provide useful information and (3) messages regarding Plaintiff and her termination do not exist and thus were not deleted by Defendant City.  (Doc. 101, at 4-5.)

Defendant City's objections are **overruled**.  The Court finds that the billing records have sufficient discovery relevance, ***Teichgraeber***, 932 F.Supp. at 1265,

because the records could show that text or instant messages were in fact sent by and between the individual Defendants before, during or after Plaintiff's termination.  These records, with additional information, could possibly show that the individual Defendants were texting or instant messaging about the Plaintiff or Plaintiff's termination.  Further, issues of cost and burdensomeness have been resolved.  Plaintiff agreed to narrow the Request's scope to the billing records of two Defendant City officials, Erin Giebler and Brian Dawson.  (Doc. 89-1, at 6.) Also, because the Court finds that the timeframe contemplated by Plaintiff's Request (extending over a year and a half after Plaintiff's May 16, 2012, termination) encompasses periods of time not relevant to Plaintiff's termination, the Court limits the timeframe of Plaintiff's Request 83 to three months before and after Plaintiff's termination.  (*Id.* at 10.)  The Court therefore **GRANTS** Plaintiff's motion to compel Request 83 and orders Defendant City to produce the Nex-Tech Wireless records for text and instant messages made by individual Defendants Giebler and Dawson between February 16, 2012, and August 16, 2012.

## 2.    **Request 84.**

Plaintiff seeks

> [a]ny logs or records reflecting data about text messages sent to or received from the City of Hays, Kansas cellular phones assigned to Scheibler, Dougherty, Dawson, Niehaus, or Briseno from May 1, 2012 to the present, including number of text

messages sent, number of text messages received, and phone numbers of recipients.

(Doc. 89-1, at 4.)  Plaintiff mentioned two types of records that would satisfy the Request --  (1) "face sheets," or records or logs that "identify which calls and text messages were for official business and which were personal" and (2) Nex-Tech Wireless and Verizon Wireless text message logs or records.  (*Id*. at 7-8.)  Plaintiff cited ***Flagg v. City of Detroit***, 252 F.R.D. 346, 352-58 (E.D. Mich. 2008), as authority that Defendant City should be compelled to obtain additional records or logs from the aforementioned wireless providers.  (Doc. 89-1, at 8.)

Defendant City objects to Plaintiff's Request and claims that while it requires employees "to review their monthly bill" and "highlight personal minutes on phone calls," it does not require employees to do so for text messages.  (Doc. 101, at 7.)  Defendant City, seeming to overlook Verizon Wireless, claims that message records are controlled by Nex-Tech Wireless, not Defendant City, and that Nex-Tech refuses to release the records despite Plaintiff's subpoena, Defendant City's "consent for release" and Defendant City's overall efforts to secure release of records held by Nex-Tech.  (*Id*. at 6.)  Finally, Defendant City claims Plaintiff's Request "will not produce any relevant or discoverable information."  (*Id*. at 7.)

### a.    discovery relevance of Request 84 logs or records

The Court finds that logs or records pertaining to text messages about Plaintiff or Plaintiff's termination, created or maintained either by specified City personnel or wireless providers, have sufficient discovery relevance and could produce discoverable information. *Teichgraeber*, 932 F.Supp. at 1265. Text message logs or records could provide Plaintiff with information pertaining to her termination and the decision making process behind it, especially if the original text messages were deleted from, or no longer exist on, City cellular phones used by specified Defendant City personnel. Text message logs or records could disclose whether messages were sent or received, message recipients or senders and, possibly, details about message content, if any, pertaining to Plaintiff or Plaintiff's termination.

Further, the personnel specified by Plaintiff's Request were (or are) City personnel who were empowered to make or recommend City hiring and firing decisions, have (or had) supervisory or other authority over Plaintiff, were implicated in statements pertaining to Plaintiff made by one or more of the specified personnel or admitted to creating a type of log or record detailing text message information, or had some other interest in Plaintiff's disposition as a City employee. Also, the wireless providers specified by Plaintiff were (or are) Defendant City's telecommunication providers. The Court, however, finds that the

10

Request's timeframe (extending over a year and a half after Plaintiff's May 16, 2012, termination) encompasses periods of time not relevant to Plaintiff or Plaintiff's termination.  (Doc. 89-1, at 4, 10.)  The Court therefore limits the timeframe of Plaintiff's Request 84 to three months before and after Plaintiff's termination.  (Doc. 89-1, at 10.)

> **b.    face sheets**

Any text message face sheets made by Defendant City employees using City cellular phones are either under Defendant City's control or in its possession. Brian Dawson, Defendant City employee and one of the personnel specified by Request 84, testified during a deposition to filling out a face sheet, possibly on a monthly basis, to distinguish between official or personal phone calls or text messages.  (Doc. 89-1, at 7, 89-12, at 2-3.)  Defendant City claimed it does not require employees to do this for text messages and asserts that "face sheets would not provide" either a log or substance of text messages sent or received.  (Doc. 101, at 7.)  Defendant City, however, neither disputed Plaintiff's assertions about Dawson's deposition testimony nor established that face sheets do not exist.  (*Id.*) Further, for the reasons discussed above, the Court finds that face sheets have sufficient discovery relevance.  The Court therefore **GRANTS** Plaintiff's motion to compel Request 84 as to any face sheets created or maintained by the specified

Defendant City personnel between February 16, 2012, and August 16, 2012, that pertain to Plaintiff or Plaintiff's termination.

### c.    Nex-Tech logs or records and *Flagg v. City of Detroit*

In ***Flagg v. City of Detroit***, the defendant City sought to prevent the plaintiff's discovery of stored electronic communications possessed by Detroit's "non-party service provider."  252 F.R.D., at 347.  The City claimed that under the Stored Communications Act, 18 U.S.C. § 2701 *et seq*., text message communications between Detroit employees possessed by Detroit's former wireless provider were not discoverable.  *Id*., at 348-49.  Here, however, Defendant City claimed that despite working to acquire Nex-Tech records for Plaintiff to the extent of providing Nex-Tech consent via email to a release of records, Nex-Tech nonetheless expressly refused to produce text message records without a court Order.  (Docs. 101, at 6, and 101-6, at 1-4.)  Plaintiff neither denied nor challenged these claims.  (Doc. 89-1, at 8.)  Plaintiff's argument that Defendant City "should be required to obtain records responsive to" Plaintiff's Request No. 84 (Doc. 89-1, at 8) and Defendant City's response that it cannot provide Nex-Tech records because they are not in Defendant City's control (Doc. 101, at 6) are therefore misdirected.

Plaintiff, by moving to compel Defendant City to produce Nex-Tech Wireless or Verizon Wireless logs or records, thus did not request the proper remedy to this situation. Defendant City cannot be compelled to produce Nex-Tech records if Nex-Tech refuses to release them. This portion of Plaintiff's motion is, therefore, **DENIED**. If Plaintiff still wishes to obtain the documents sought by Request 84 from Nex-Tech Wireless, which were the subject of a third party business subpoena to Nex-Tech (*see* Doc. 101, at 6), Plaintiff must file a motion to compel production of the subpoenaed documents. Plaintiff shall have **thirty (30) days** from the date of this Order to file any such motion compelling Nex-Tech.

### 3.    Request for Admission 41.

Plaintiff requested that Defendant City admit that

> [a]side from conversations with his attorneys or his spouse, Scheibler has discussed the firing of Ms. Helget with individuals who are not employees of the City of Hays, Kansas and whom the City has not specifically permitted to receive confidential City information.

(Doc. 89-1, at 8.) In response to the Request for Admission, Defendant City

> [d]enied to the extent that this request seeks an admission that telling individuals that Plaintiff was terminated is "confidential City information." Admitted that Don Scheibler told individuals who were not employees of the City of Hays that Plaintiff was terminated.

13

(Doc. 101, at 7.)  Plaintiff contends Defendant City's "response does not comply with Rule 36 because" Defendant City "reworded [Plaintiff's] question in [its] response" (i.e., Defendant City's use of "told" instead of Plaintiff's "discussed"). (Doc. 89-1, at 8-9.)  Plaintiff also contends Defendant City answered a question Plaintiff did not ask (i.e., Defendant City's denial that telling people about Plaintiff's termination is "confidential city information").  (*Id*. at 9-10.)  Plaintiff argues that this Court should deem its Request admitted and ignore Defendant City's answer to the extent it answers a question Plaintiff did not ask.  (*Id*.) Defendant City contends its response "complies with Rule 36."  (Doc. 101, at 8.)

The Court finds that Defendant City's response to Plaintiff's Request for Admission No. 41 was non-responsive in certain aspects.  Initially, Defendant's substitution of the word "told" for "discussed" in the response was an improper alteration of the language of Plaintiff's Request.  (*Id*. at 7; *see also* Doc. 89-1, at 8.) As Plaintiff noted, and as the Court acknowledges, "discussed" and "told" have different definitions.  (Doc. 89-1, at 9.)  In responding to this request, Defendant shall interpret the word "discussed" as defined in Plaintiff's memorandum.  (Doc. 89-1, at 9.)  If this response is used as evidence, it shall be presented together with that definition.

Further, Defendant did not respond to the entire request.  The request

14

specifically seeks an admission as to a) whether Defendant Scheibler discussed Defendant City's termination of Ms. Helget's employment with persons not employed by Defendant City and b) whether such persons were authorized by Defendant City to receive "confidential City information." (*Id*. at 4.) Defendant City's response, however, did not specifically address the second portion of the request -- whether the persons Defendant Scheibler conversed with were authorized by Defendant City to receive confidential information. Rather, Defendant City merely stated that Defendant Scheibler "told individuals who were not employees of the City of Hays that Plaintiff was terminated." (Doc. 101, at 7.) Defendant City's response therefore neither admits nor specifically denies the remainder of Plaintiff's Request, as required by Fed.R.Civ.P. 36(a)(4), and is thus non-responsive. The Court therefore **ORDERS** Defendant City to respond to Plaintiff's Request for Admission 41 by either admitting or specifically denying Plaintiff's entire Request based on the Request's exact language. As the Court reads the request, it must be admitted only if Scheibler has "discussed" Plaintiff's firing with at least 2 people ("individuals") who were <u>both</u> not City employees <u>and</u> not specifically permitted to receive confidential City information. Otherwise, the request should be denied.

4.     **Request for Production No. 92.**

Plaintiff contends a data entry within a database document she discovered from Defendant City shows Defendant City remotely accessed Plaintiff's work computer prior to a meeting in which Defendant City officials formally approved termination of Plaintiff's employment and prior to the day Plaintiff's employment was terminated.  (Doc. 89-1, at 10.)  Plaintiff seeks the database in which the data entry exists to analyze metadata pertaining to the creation and modification of the data entry.  *Id*.

Defendant City objects and claims the following: "the database does not contain" individual entry information, Defendant City already produced sufficient information, and that database metadata is limited "to the creation date and last modified date as to the table as a whole."  (Doc. 101, at 9.)  Defendant City thus claims the database "will not provide information as to the specific entries pertaining to Plaintiff's computer."  *Id*.

Defendant City's objections are **overruled**.  Any original metadata that can verify whether, when, and the extent to which Defendant City's personnel remotely accessed Plaintiff's work computer prior to Plaintiff's termination is unquestionably of sufficient discovery relevance.  ***Teichgraeber***, 932 F.Supp. at 1265.  It can be used to establish which of Defendant City's personnel remotely accessed Plaintiff's computer, when they accessed it, or what they did while

16

remotely logged-in to Plaintiff's computer. *Williams*, 230 F.R.D. at 646.

One of Defendant City's justifications for terminating Plaintiff's employment was Plaintiff's alleged misuse (what Defendant City describes as excessive personal use) of her City computer. (Doc. 42, at 1.) Any original database metadata pertaining to instances of Defendant City personnel remotely accessing Plaintiff's computer, therefore, could be "key" to establishing a relationship between the alleged evidence of misuse found by Defendant City and any metadata arising from the activities of Defendant City IT personnel while remotely logged-in to Plaintiff's computer. *Williams*, 230 F.R.D. at 647. The Court therefore **GRANTS** Plaintiff's motion as to Request 92. However, to ensure Plaintiff's Request is not overly broad, unduly burdensome or irrelevant, the Court **ORDERS** Defendant City to produce the original IT Services database log, with all original database metadata, only as to service of or access to Plaintiff's City computer occurring within fourteen (14) days before and after Plaintiff's May 16, 2012, termination. (Doc. 89-1, at 10.)

### 5. Requests for Production Nos. 101 and 102.

Plaintiff contends an e-mail between Huber & Associates (H&A) employees shows Defendant City deleted e-mails pertaining to Plaintiff and that H&A, Defendant City's IT service provider, "might" have copies of those emails. (Doc.

89-1, at 12.)  Plaintiff furthermore contends Defendant City refused to produce the contract between existing between Defendant City and H&A at the time Plaintiff made this Request, deleted Plaintiff's Lotus Notes work email account, and produced a blank CD copy of Plaintiff's Lotus Notes account.  (*Id.*)  Plaintiff's Request No. 101 therefore seeks "any documents and ESI relating to the City's contract with" H&A, "including . . . the most recent contract and any other documents and ESI related [to] the City's relationship with" H&A.  (*Id.* at 5.) Plaintiff argues this information is relevant to determining the nature of services provided by the H&A to Defendant City.  (*Id.* at 12-13.)  Plaintiff's Request No. 102 therefore seeks "[a]ll billing and payment records . . . made by the City to" H&A and argues that they may disclose "whether [H&A] was ever asked to restore deleted documents" to include Plaintiff's "Lotus Notes account" and emails pertaining to Plaintiff.  (*Id.* at 5, 13.)

Defendant City did not dispute Plaintiff's Requests Nos. 101 and 102 under the federal discovery rules, other procedural law, or substantive law.  (Doc. 101, at 9.)  Defendant City, however, claimed it received additional pertinent documents from H&A and has subsequently produced them to Plaintiff.  *Id.*

Plaintiff responded to this assertion and claimed, particularly as to Request 101, that the subsequently produced documents "still did not include any of the

City's past contracts with" H&A.  (Doc. 116, at 9.)  Plaintiff's Request 101,

though, does not expressly seek documents and ESI relating to Defendant City's

**past** contracts with H&A.[2]  (Doc. 89-1, at 5.)  Instead, Plaintiff's Request 101

seems only to seek Defendant City's current or most recent contract with H&A.

(*Id.*)  In light of the ambiguity of Plaintiffs Request and the admonition contained

in Fed.R.Civ.P. 1, the Court finds Plaintiff's Request 101 also contemplates past

contracts between Defendant City and H&A.  The Court **GRANTS** Plaintiff's

Motion as to Requests 101 and 102 and **ORDERS** Defendant City to fully comply

with Requests Nos. 101 and 102.  Defendant City is further **ORDERED** to

interpret Plaintiff's Request 101 to include a request for past contacts between

Defendant City and H&A.  The Court, however, limits the scope of Plaintiff's

Requests to documents and ESI dated between May 1, 2012, and January 1, 2014.

### 6.  Request for Production No. 103.

Plaintiff believes multiple individual Defendants corresponded with former

Defendant City employee Desiree Rome about Plaintiff's termination.  (Doc 89-1,

at 5, 14.)  Plaintiff thus sought, and received from individual Defendants,

correspondence between them and Rome.  *Id.*  Plaintiff, however, claims

---

[2] Plaintiff only asked for "[a]ny documents and ESI relating to the City's contract with" H&A, "including a copy of the most recent contract . . . ."  (Doc. 89-1, at 5.)

Defendant City "indicated" to Plaintiff in a meeting "that the City hadn't even searched its email server, the City's computers, its physical files, or any other location" for correspondence between Rome and the individual Defendants. (*Id.* at 14.)

Defendant City responded and seemed to indicate, but did not expressly state, that it already responded to Plaintiff's Request 103. (Doc. 101, at 9-11.) Defendant City claims it searched its email, computer, Lotus notes and other systems for correspondence between Rome and the individual Defendants and produced documents (hard-copy and electronic), audio recordings, and other information to Plaintiff from these systems. (*Id.* at 9-10.) Additionally, Defendant City described individual Defendants' correspondence (or lack thereof) with Rome. (*Id.* at 10.) Defendant City claims only Defendant Scheibler corresponded with Rome about Plaintiff and that, when asked by Rome whether Plaintiff "still works for the police department," Defendant "Scheibler responded [Plaintiff] did not." (*Id.*) Defendant City says Plaintiff's Request 103 is "excessive." (*Id.* at 10.)

Plaintiff argues that Defendant City initially certified it "had not identified any responsive documents" but later "admitted to Plaintiff that the City hadn't even searched for documents responsive to this request." (Doc. 116, at 10.) Plaintiff believes Defendant City admitted in its Joint Response to Plaintiff's

20

Motion to Compel (Doc. 101) that Defendant City has "never searched for documents responsive to this request."  (Doc. 116, at 10.)  Plaintiff claims Defendant City's "response is improper" because Defendant City has neither "refused to search" for relevant documents nor objected to Plaintiff's Request 103.  (*Id*.)

The Court **DENIES** Plaintiff's Motion as to Request 103.  The Court finds Defendant City has produced a complete response to Plaintiff's Request.  (*See* Doc. 101, 9-10.)  The list of items, if indeed produced to Plaintiff as Defendant City described, encompasses substantial information pertaining to correspondence with Rome, and Plaintiff does not claim that Defendant City has not produced the information or that Plaintiff has not received the information.  (*See* Doc. 116, at 10.)  Defendant City has provided information sufficient for Plaintiff to determine the nature of correspondence (or lack thereof) between Rome and the individual Defendants.  (*See id*. at 10-11.)

Based on Defendant City's assertions and the information Defendant City claims to have produced, Defendant City has indeed searched for information responsive to Plaintiff's Request.  (*Id*. at 9-11.)  Plaintiff has not shown Defendant City's response to Plaintiff's Request 103 is incomplete, ***Bayview Loan Servicing, LLC***, 259 F.R.D. at 518, and the Court does not want to impose unnecessarily

costly or unreasonably duplicative discovery on Defendant City.  Fed.R.Civ.P.

26(b)(2)(C)(i).

## C.      Plaintiff's Request for Sanctions.

Plaintiff asks the Court to sanction Defendant City under Fed.R.Civ.P. 26(g)

and seeks attorney's fees and the costs of bringing its Motion to Compel.  (Doc.

89-1, at 15; Doc. 116, at 12-13.)  Plaintiff contends Defendant City falsely certified

under Fed.R.Civ.P. 26(g)(1)(B)(i), (ii) and (iii) because Defendant City's responses

to Plaintiff's requests were (or are) incomplete, improper or nonresponsive.  (*See*

*generally* Docs. 89-1, at 4-10, 13-15; 116, at 6, 9 and 10.)  Generally, Plaintiff

contends Defendant City's responses have not complied with the discovery rules,

have caused "unnecessary delay" or are "unreasonable" under Fed.R.Civ.P.

26(g)(B).  (Doc. 89-1, at 15.)

Based on the Court's analysis in Section II (C) of this Memorandum and the

decision in *Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 646 (D. Kan. 1999),

Defendant City's responses and objections to Plaintiff's Requests are substantially

justified, rendering sanctions inappropriate.  Further rendering sanctions

inappropriate is the fact that the Court is partly granting and partly denying

Plaintiff's Motion.  Fed.R.Civ.P. 37(a)(5)(C).  The Court therefore **DENIES**

Plaintiff's Request for sanctions.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Discovery Responses (See Docs. 89 and 89-1) is **GRANTED in part** and **DENIED in part** as more fully set forth above.  Any documents or supplemental responses that have been ordered to be produced shall be provided within **thirty (30) days** of the date of this Order.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas, on this 25th day of June, 2014.

     S/ KENNETH G. GALE
KENNETH G. GALE
United States Magistrate Judge

23